UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Civil Action No. 25-4089 (AHA) |

**JOINT STATUS REPORT**

Pursuant to the Court's March 5, 2026, Minute Order, Plaintiff Democracy Forward Foundation and Defendants Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), by and through undersigned counsel, respectfully submit the Parties' second joint status report.

This case concerns Plaintiff's Freedom of Information Act ("FOIA") requests for records submitted on October 7 and 17, 2025. *See* Compl. (ECF No. 1). DHS and ICE received FOIA requests from Plaintiff on October 7 and 17, 2025.

The parties' separate statements are included below.

**Defendants' Statement:**

DHS and its components, including ICE, are currently experiencing a lapse in appropriations which began February 14, 2026. Due to this lapse of appropriations, staff in both the DHS and ICE FOIA offices are furloughed, and are restricted in conducting work limited to what is stated below.

Defendants report that the status of Plaintiff's FOIA requests are as follows:

**DHS**

Defendant DHS received Plaintiff's October 7, 2025, request for "all raw video and or/audio footage in the possession of DHS and/or ICE of the South Shore Chicago apartment complex raid conducted on or around September 30, 2025, in which dozens of individuals were detained and from which DHS published edited footage." DHS is working directly with ICE to jointly review search results and identify non-duplicative responsive records. DHS will work with ICE once the lapse of appropriations has ended.

Defendant DHS also received Plaintiff's October 17, 2025, request for all records disseminated to ICE officers in the division of Enforcement and Removal Operations ("ERO") regarding, among other things, operations and arrests, detention, training provided to ICE ERO officers regarding the Fourth Amendment and other constitutional rights. On November 22, 2025, DHS acknowledged receipt of the October 17, 2025, request and transferred the requests to ICE for processing. Based on the Court's Order issued March 5, 2026, DHS recalled an employee from its FOIA office and consulted with ICE on searching for records subject to this request. DHS maintains that ICE would primarily be the records custodian for these records. DHS will work with ICE once the lapse of appropriations has ended to ensure there are no other responsive records maintained by DHS that is not also maintained by ICE, after ICE reviews and processes their records.

**ICE**

Defendant ICE received Plaintiff's October 7, 2025, request for "all raw video and or/audio footage in the possession of DHS and/or ICE of the South Shore Chicago apartment complex raid conducted on or around September 30, 2025, in which dozens of individuals were detained and from which DHS published edited footage." ICE reports that this request was tasked by ICE FOIA

to the Office of Public Affairs ("OPA") which completed its search for potentially responsive records.  The number of potentially responsive records is 84.  ICE is currently experiencing a lapse of appropriations from February 14, 2026, through the present.  Due to this lapse of appropriations, staff in the ICE FOIA office are furloughed and not permitted process responsive records.

Defendant ICE also received Plaintiff's October 17, 2025, request for all records disseminated to ICE officers in the division of Enforcement and Removal Operations ("ERO") regarding, among other things, operations and arrests, detention, training provided to ICE ERO officers regarding the Fourth Amendment and other constitutional rights.  ICE reports that this request was tasked by ICE FOIA to ERO which completed its search for responsive records. Defendants previously reported in the motion to stay that DHS and ICE FOIA offices and other offices needed to perform adequate searches furloughed staff.  In order to comply with the Court's March 5, 2026, Minute Order, ICE excepted staff from furlough to conduct its search for records responsive to this request.  In accordance with this Minute Order, ICE completed its search for records responsive to this request on March 9, 2026.  ICE located 846 pages of potentially responsive records. ICE is currently experiencing a lapse of appropriations that began February 14, 2026, and continues through the present.  Due to this lapse of appropriations, staff in ICE FOIA office are furloughed and not permitted process responsive records.

The attached declaration of Kenneth Clark, ICE's Assistant Director of the Office of Information Governance and Privacy, explains the impact that the lapse in appropriations has had on ICE FOIA operations.  As Clark explains, the ICE FOIA staff are furloughed and unable to work on this case.

Within a reasonable time after ICE receives appropriations, ICE will provide Plaintiff an estimated date when ICE expects producing responsive records on both FOIA requests. ICE FOIA aims to process 500 pages per month.

Defendants oppose Plaintiff's attempt to litigate the appropriate timing of ICE's completion of its search by statements in a joint status report. Ordering an agency to complete an action is different than the Court addressing scheduling matters for the Parties in a FOIA case. Federal Rule of Civil Procedure 7(b)(1) requires that "[a] request for a court order must be made by motion." A separately filed motion would allow the Court to see exactly what relief Plaintiff requests, the factual bases (if any) in support, and the legal argument(s) trying to justify this relief. A separately filed motion would also provide notice to Defendants so that they could appropriately prepare their response, gather factual materials if needed, and address the merits.

***

**Plaintiff's Statement**:

Plaintiff requests that the Court require Defendant ICE to process the modest volume records potentially responsive to its *ICE Training Materials* request, *see* Compl. ¶ 18, by April 30, 2026, notwithstanding the current lapse in appropriations. ICE concedes that it has authority to process those records if subject to a court-ordered processing schedule. And the records at issue— training materials and policy documents concerning ICE's use of warrants and compliance with the Fourth Amendment and other constitutional protections, are directly tied both to the matter of public debate that is causing the lapse in appropriations and to activities for which ICE has available appropriations. Indefinitely delaying public transparency into activities that ICE continues to carry out until the congressional debate over those activities has been resolved will seriously harm the public interest that FOIA is intended to serve. Plaintiff cabins this request only

to these priority records and not to the other FOIA request in this litigation and explains its reasons for this request in greater detail below.

*Delaying Release of Records Concerning ICE's Warrant and Fourth Amendment Compliance Due to the Shutdown Will Perversely Harm the Public Interest*

Plaintiff's *ICE Training Materials* request seeks training materials, guidance, instructions, and directives to ICE officers regarding "the need for or execution of warrants," "when a warrant is or is not required," and "compliance with respect to constitutional rights, including the Fourth Amendment." Compl. ¶ 18. Controlling ICE's use of warrants and compliance with the Fourth Amendment is the first demand of congressional leaders in the ongoing dispute over appropriating additional funds for ICE operations.[1] ICE's position that no records will be released until after the appropriations dispute has been resolved will prevent the public and their congressional representatives from accessing training and guidance documents directly relevant to that dispute until they no longer inform public debate. Meanwhile, ICE is—notwithstanding the lapse in appropriations—still hiring and training new officers and making controversial arrests without judicial warrants. *See, e.g.,* ICE Law Enforcement Specialist Job Posting, https://ice.usajobs.gov/job/860604000 (posting open starting today, March 11, 2026); Chasity Maynard & Stacey Cameron, *The warrant ICE used to arrest a Nashville journalist wasn't signed by a judge. Here's why*, WSMV4 News, Mar. 10, 2026, https://tinyurl.com/4pj4bkam (explaining reporter, "who recently covered anti-ICE legislation and the agency's activity," was arrested by ICE without a judicial warrant).

---

[1] *See* Letter from Hakeem Jeffries & Chuck Schumer, U.S. House of Representatives Democratic Leader & U.S. Senate Democratic Leader, to Mike Johnson & Jone Thune, Speaker of the U.S. House of Representatives & U.S. Senate Majority Leader (Feb. 4, 2026), https://tinyurl.com/ycxu96am (demanding as a condition of additional funding that "DHS officers cannot enter private property without a judicial warrant. End indiscriminate arrests and improve warrant procedures and standards.")

Plaintiff respectfully seeks this Court's intervention to ensure timely processing and production of these ICE records of great public concern, through a standard processing schedule that would only require the agency to process the 846 pages of potentially responsive records by April 30, 2026, functionally at its standard rate of approximately 500 pages per month. The public interest and the purposes of FOIA would be seriously harmed by the agency's position that processing be suspended indefinitely.

*The Court Has Authority to Require the Agency to Process the Records At Issue Here*

The Court has ample authority to require Defendant ICE to process the records at issue here notwithstanding the lapse in appropriations. *First*, the Court has broad equitable authority to set scheduling orders for processing and production in FOIA cases.[2] *Second*, under longstanding executive branch legal interpretation, Defendant ICE can process records when required to by a court order. *See* U.S. Dep't of Justice, FY2026 Contingency Plan, at 2–3 (Sept. 29, 2025), https://tinyurl.com/bdest7tj ("If a court denies" a stay request "and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue."). Indeed, Defendants acknowledge that they are using resources available to the agency, including contractors, to process records in FOIA cases where there is a court-ordered schedule. Declaration of Kenneth Clark ¶ 14 n. 1.

*Third*, as explained by Plaintiff's opposition to Defendants' prior motion to stay this matter, ECF No 16 at 2-3, ICE continues to have tens of billions of dollars of multi-year appropriations

---

[2] This type of scheduling management is well within the Court's "broad equitable authority" to manage FOIA matters. *CREW v. DOJ*, 846 F.3d 1235, 1241–42 (D.C. Cir. 2017). *See, e.g.*, Minute Order, *Burleigh v. FCC,* 25-1268-ABJ (D.D.C. Dec. 8, 2025) (ordering Defendant to complete processing and production of 900 remaining pages in 39 days); Order, *NYCLU v. HHS ACF*, 20-cv-183 (S.D.N.Y.) ECF No. 30; Minute Order, Am. Oversight v. DOJ, 17-cv-727 (D.D.C.) (June 12, 2017); Minute Order, *Citizens United v. U.S. Dep't of S*tate, 16-cv-67-CRC (D.D.C) (Apr. 19, 2016).

available to it for hiring, training, and immigration enforcement. In Public Law 119-21, Congress appropriated $29 billion to ICE—available through September 30, 2029—for "hiring and training" for immigration enforcement. *See* Sections 100052. Plaintiff's *ICE Training Materials* request seeks records from training and onboarding activities that have experienced no lapse in appropriations. The Executive Branch has long recognized that such activities that are closely related to funded activities are "authorized by necessary implication." U.S. Dep't of Justice, Office of Legal Counsel, Authority for the Continuance of Government Functions During a Temporary Lapse in Appropriations, at 5 (Jan. 16, 1981), https://perma.cc/M6R3-4C3W (discussing authority for agency to conduct unfunded administration actions to administer federal benefit programs that did not experience a lapse in appropriations). Here, Defendants' continued training and onboarding of agents and employees implicates exactly the training documents related to compliance with constitutional protections that are the prime subject of Plaintiff's request. Processing a FOIA request to comply with a statutory transparency obligation related to these funded activities is authorized by implication.

Indeed, Defendants' declaration acknowledges that *some* FOIA litigation work may be sufficiently tied to exempt or excepted work such that it is authorized during the lapse—only that Defendants have judged "this case" not to fall into that category. *See* Clark Decl. ¶ 15 ("exempt functions are funded by appropriations that have not lapsed, such as multi-year or permanent appropriations, including expenditures funded under the One Big Beautiful Bill Act … FOIA litigation work that is not tied to those exempt or excepted categories, including the FOIA litigation at issue in this case, has not been authorized to continue during the lapse in appropriations.")

Although Plaintiff believes the Court may properly order a processing schedule in a FOIA case on the basis of the parties' statements, *see* Plaintiff's Statement, Joint Status Report, ECF No.

13 at 6-7,[3] Plaintiff is also prepared to file a motion for a production schedule if it would aid the Court's consideration.[4]

Plaintiff respectfully requests that the Court require ICE to process and produce non-exempt portions of the 846 pages of records potentially responsive to the *ICE Training Materials* request by April 30, 2026.

Jointly, regardless of the Court's resolution of the parties dispute, the Parties respectfully propose that the Court permit the Parties to submit another joint status report in sixty-one days, on Monday, May 11, 2026, updating the Court on the status of the processing of Plaintiff's FOIA requests.

Dated: March 11, 2026
Washington, D.C.


By: */s/ Daniel A. McGrath*
Daniel A. McGrath (D.C. Bar No. 1531723)
Robin F. Thurston (Bar No. 7268942)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiff*

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:   */s/ Mason D. Bracken*
     MASON D. BRACKEN
     Assistant United States Attorney
     601 D Street, N.W.
     Washington, D.C. 20530
     Telephone: (202) 252-2523
     mason.bracken@usdoj.gov

*Attorneys for the United States of America*

---

[3] *See, e.g.*, Minute Order, *Burleigh v. FCC,* 25-1268-ABJ (D.D.C. Dec. 8, 2025) (ordering Defendant to complete processing and production of 900 remaining pages in 39 days); Order, *NYCLU v. HHS ACF*, 20-cv-183 (S.D.N.Y.) ECF No. 30; Minute Order, Am. Oversight v. DOJ, 17-cv-727 (D.D.C.) (June 12, 2017); Minute Order, *Citizens United v. U.S. Dep't of S*tate, 16-cv-67-CRC (D.D.C) (Apr. 19, 2016).

[4] Resolution on the basis of the parties' statements without further motion practice is, if anything, more appropriate in this instance where the Court has already considered Defendants' motion to stay the matter.